UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RHONDA CARMELLA LEONARD,

                Plaintiff,

v.                                 5:14-CV-1353
                                 (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                        OF COUNSEL:

STANLEY LAW OFFICES, LLP         JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.       DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 17.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Rhonda

Carmella Leonard ("Plaintiff") against the Commissioner of Social Security ("Defendant"

or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings.  (Dkt. Nos. 11, 15.)  For the reasons set forth below, it is recommended that Plaintiff's motion be deinied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on September 30, 1963.  (T. 54.)  She completed high school. (T.  149.)  Generally, Plaintiff's alleged disability consists of herniated disc, back injury, depression, carpal tunnel syndrome, and accumulative trauma disorder.  (T. 148.)  Her alleged disability onset date is November 24, 2010. (T. 54.)  Her date last insured is December 31, 2015.  (*Id*.)  She previously worked as an executive assistant, bookkeeper, and in customer service.  (T. 149.)

### B.    Procedural History

On July 13, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 145.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 23, 2013, Plaintiff appeared before the ALJ, Scott M. Staller. (T. 25-53.)  On June 25, 2013, ALJ Staller issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 6-24.)  On October 8, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 11-20.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015 and Plaintiff had not engaged in substantial gainful activity since November 24, 2010. (T. 11.) Second, the ALJ found that Plaintiff had the severe impairments of herniated disc at L5-S1 status post laminectomy and discectomy, fibrocystic disease of the breast, history of asthma, history of hypertension, obesity, and a depressive disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 11-13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 13.)[1] The ALJ determined Plaintiff could only occasionally balance, stoop, kneel, crouch or crawl. (*Id.*) He determined Plaintiff could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. (*Id.*) He determined Plaintiff must avoid concentrated exposure to dusts, gases, fumes, odors, poor ventilation, and other pulmonary irritants. (*Id.*) The ALJ determined Plaintiff could understand, remember, and carry out simple instructions and make judgments on simple work related decisions. (*Id.*) He determined Plaintiff was limited to only brief, infrequent, and superficial contact with the public and only occasional contact with coworkers or supervisors. (*Id.*) The ALJ determined Plaintiff could respond to usual work situations and the changes to a routine work setting; she could maintain attention and concentration for two hour segments over an eight hour period and complete a normal

---

[1]       Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

work week without excessive interruptions from psychologically or physically based symptoms. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 18-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ did not apply the appropriate legal standards when he determined Plaintiff retained the RFC for sedentary work. (Dkt. No. 11 at 7-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ committed legal error in evaluating Plaintiff's credibility. (*Id.* at 13-15.) Third, and lastly, Plaintiff argues the vocational expert ("VE") testimony cannot provide substantial evidence to support denial. (*Id.* at 15-16.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ did not err in determining Plaintiff's RFC. (Dkt. No. 15 at 5-13 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 14-16.) Third, and lastly, Defendant argues the ALJ correctly relied upon the VE's testimony at step five. (*Id.* at 16-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole §, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    The ALJ's RFC Determination

Plaintiff's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545. In making an RFC determination the ALJ must consider all of Plaintiff's impairments, including impairments that are non-severe. *Id.* at § 404.1545(e). In formulating an RFC determination, the ALJ will base his determination on "all relevant evidence" in the record. *Id.* at § 404.1545(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

Essentially, Plaintiff argues the ALJ erred in his RFC determination because he rejected the medical opinions of Plaintiff's treating sources and instead relied on his own lay interpretation of the clinical records. (Dkt. No. 11 at 7 [Pl.'s Mem. of Law].)

First, Plaintiff argues the ALJ failed to evaluate the opinion of Plaintiff's treating physician, Stephan Robinson, M.D., according to the factors outlined in the Regulations. (Dkt. No. 11 at 9 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ committed legal error in failing to mention that Dr. Robinson was a specialist in orthopedic medicine. (*Id.* at 9.) However, it is well established that where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ's reasoning and adherence to the Regulations was clear. In his discussion of the evidence, the ALJ acknowledged that Plaintiff underwent surgery and received treatment from Dr. Robinson with Syracuse Orthopedic Specialists ("SOS"),

thus indicating Dr. Robinson was an orthopedist. (T. 15-16); 20 C.F.R. § 404.1527(c)(2)(iv). The ALJ listed the dates Plaintiff received treatment at SOS, thus indicating he was aware of the frequency of examinations. *Id.* at § 404.1527(c)(2)(i). The ALJ also determined that Dr. Robinson's treatment notations were inconsistent with physical examinations. *Id.* at § 404.1527(c)(2)(ii)-(iii). Therefore, the ALJ did not err as a matter of law in his evaluation of Dr. Robinson's opinion because the ALJ clearly adhered to the factors outline in the Regulations.

Second, Plaintiff argues the ALJ erred in affording consultative examiner, Tanya Perkins-Mwantuali, M.D.'s opinion "significant weight" over Dr. Robinson's opinion, because Dr. Mwantuali's opinion was vague and did not offer specific functional limitations. (Dkt. No. 11 at 10 [Pl.'s Mem. of Law].) The main contention here is whether or not the ALJ's determination that Plaintiff retained the RFC to sit for six hours in an eight hour workday was supported by substantial evidence. If Plaintiff cannot sit for six hours in an eight hour workday, her ability to perform a full range of sedentary work would be eroded. Regarding Plaintiff's ability to sit, the medical evidence contains vastly different opinions.

Plaintiff received her primary orthopedic care from Dr. Robinson. Dr. Robinson opined, in a medical source statement dated May 20, 2013, that Plaintiff could sit for less than two hours total in an eight hour work day. (T. 652.) He further opined that Plaintiff needed a job that allowed her to shift positions at will from sitting, standing, or walking. (*Id.*) The record also contained numerous treatment notations completed by Dr. Robinson. (T. 267-314, 420-438.) The treatment records did not provide any additional specific functional limitations regarding Plaintiff's ability to sit.

Dr. Mwantuali examined Plaintiff on September 22, 2011. (T. 319.) Dr. Mwantuali noted on physical examination that Plaintiff had tenderness in the lumbar spine and reduced range of motion in the lumbar spine. (T. 321.) Dr. Mwantulai observed that Plaintiff had a normal gait; could walk on heels and toes, but held onto the wall; could fully squat, but held onto the table; needed no help in changing for the examination; and was able to rise from a chair without difficulty. (T. 320.) In her medical source statement, Dr. Mwantuali stated Plaintiff had "moderate to marked limitation with bending, pushing, pulling, lifting, squatting. [Plaintiff] should avoid respiratory irritants." (T. 323.) Dr. Mwantuali did not provide a specific opinion regarding Plaintiff's ability to sit.

Plaintiff also received care from N. Rehmatullah, M.D., an orthopedic surgeon. On December 2, 2009, Dr. Rehmatullah noted Plaintiff was working, and based on his examination and review of the medical record, Plaintiff was capable of activities of daily living ("ADLs") and working. (T. 372.) On June 2, 2010, Dr. Rehmatullah noted that Plaintiff was no longer working because her employer passed away. (T. 373.) He opined that based on his examination and a review of the medical record, Plaintiff was capable of working at a "regular duty level" and capable of ADLs. (T. 374.) On September 15, 2010, Dr. Rehmatullah noted Plaintiff returned to work on August 16, 2010. (T. 375.) He opined Plaintiff was capable of performing ADLs, and able to work as an administrative assistant performing a "desk job" and "answering phones." (T. 376.) On November 10, 2010, he noted Plaintiff was still working as an administrative assistant, and he opined she was capable of ADLs, and was capable of working. (T. 377-378.)

On March 2, 2011, Dr. Rehmatullah noted that Plaintiff stated she was out of work since Thanksgiving of 2010. (T. 379.) Dr. Rehmatullah reviewed notations from Dr. Robinson, MRI results, and his own notations, and concluded that Plaintiff was unable to work in any capacity. (T. 380.) On March 3, 2011, Plaintiff underwent surgery for her lower back. (T. 381.) On June 8, 2011, Dr. Rehmatullah performed an examination and reviewed Plaintiff's medical records, he noted that Plaintiff was working twenty hours a week at "mostly a desk job" and she was capable of ADLs. (T. 382.) On August 4, 2011, Dr. Rehmatullah noted Plaintiff was working as an administrative assistant part time. (T. 383.) He opined that based on his examination, a review of his notations, and a review of Dr. Robinson's notations, Plaintiff was capable of working in her current capacity as an administrative assistant and performing ADLs. (T. 384.)

The ALJ afforded Dr. Robinson's opinion "limited weight." (T. 16.) At times in his treatment notations, Dr. Robinson would opine on Plaintiff's disability status. On multiple occasions, Dr. Robinson opined Plaintiff's "Disability-Work-School Status" was "total disability." (T. 269, 273, 277, 280, 284, 287, 290, 293, 298.) On other occasions, he opined Plaintiff was capable of "light duty" (T. 300) or "full duty" (T. 304, 308). The ALJ did not err in affording these specific remarks by Dr. Robinson "limited weight" because under the Regulations opinions that a plaintiff is, or is not, disabled are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

The ALJ afforded Dr. Robinson's opinion that Plaintiff could only walk a block, sit for less than two hours in an eight hour workday, and stand or walk for two hours in an eight hour workday "limited weight." (T. 16.) The ALJ reasoned Dr. Robinson's opinion was "not consistent" with his "relative mild objective findings." (*Id.*) Specifically, the ALJ

relied on Dr. Robinson's treatment notations in which he observed Plaintiff had normal station, normal spinal alignment, and full motor strength. (T. 15.) The ALJ noted that examinations indicated Plaintiff had tenderness on palpation of her lumbar area and her range of motion was moderately reduced; however, she had negative straight leg raises, normal neurological examinations, and full muscle strength. (T. 16.)

Plaintiff argues that the ALJ committed legal error because he substituted his own lay opinion for that of Dr. Robinson. (Dkt. No. 11 at 10 [Pl.'s Mem. of Law].) To be sure, the ALJ was "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek,* 802 F.3d at 375. However, the ALJ did not substitute his own interpretation of raw medical data. Here, the ALJ permissibly concluded that Dr. Robinson's functional limitations provided in his May 20, 2013 statement were not supported by his treatment notations which failed to indicate such restrictive limitations. 20 C.F.R. § 404.1527(c)(3). The ALJ specifically reasoned that Dr. Robinson's physical examinations consistently yielded the same results; however, despite consistent observation his opinion regarding Plaintiff's functional abilities to work varied. (T. 16.) Therefore, a review of the ALJ's decision indicates that he properly adhered to the Regulations in evaluating Dr. Robinson's opinion.

The ALJ afforded Dr. Mwantuali's opinion "significant weight." (T. 17.) The ALJ reasoned that Dr. Mwantuali's opinion was "somewhat vague," but consistent with her examination and consistent with examinations by Drs. Rehmatullah and Robinson. (*Id.*) Plaintiff argues the ALJ erred in affording Dr. Mwantuali's vague opinion significant weight over the specific opinion of Dr. Robinson and further that the ALJ again

substituted his own interpretation of medical findings.  (Dkt. No. 11 at 10 [Pl.'s Mem. of Law).]

To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate" without additional information does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work.  *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds.*  Additionally, the "use of imprecise and nebulous terms regarding functional limitations raises a red flag."  *Anderson v. Colvin*, No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013).  However, courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment.  *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment).  Further, courts have held that a consultative examiner's conclusion was not vague where the conclusion was "well supported by his extensive examination."  *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014).

First, the consultative examiner's finding of "moderate" to "marked" limitations pertained to Plaintiff's ability to bend, push, pull, lift, and squat.  (T. 323.)  This conclusion was consistent with the Dr. Mwantuali's physical examination of Plaintiff which indicated that she had reduced range of motion in her lumbar spine and needed

to hold the table when squatting. (T. 321.) Therefore, the conclusion that Plaintiff had moderate to marked limitations in certain areas was supported by Dr. Mwantuali's examination and the ALJ did not err in adopting those limitations in his RFC determination. Regarding Plaintiff's ability to sit, Dr. Mwantuali's medical source statement was not vague, it was completely silent.

Dr. Mwantuali provided no explicit opinion regarding Plaintiff's ability to sit, stand, or walk. (T. 323.) Plaintiff argues the ALJ improperly inferred that the absence of an opinion regarding Plaintiff's ability to sit was evidence of a contrary opinion to Dr. Robinson's statement that Plaintiff could sit for less than two hours in an eight hour workday. (Dkt. No. 11 at 11 [Pl.'s Mem. of Law].) However, the ALJ does not appear to rely on Dr. Mwantuali's silence as substantial evidence indicating Plaintiff retained the ability to sit for six hours in an eight hour workday as Plaintiff argues.

In his discussion of Dr. Mwantuali's opinion the ALJ specifically acknowledged that her opinion was silent regarding Plaintiff's ability to sit, stand, and walk. (T. 17.) The ALJ then concluded that Dr. Mwantuali's medical source statement, that Plaintiff's ability to bend, push, pull, lift, and squat, was consistent with the examinations of Dr. Rehmatullah and Robinson. (*Id.*) The ALJ afforded Dr. Mwantuali's opinion of "moderate" to "marked" limitations in those areas significant weight. (T.17.) The ALJ's decision did not indicate that he interpreted Dr. Mwantuali's silence regarding Plaintiff's ability to sit as evidence that Plaintiff could sit six hours in an eight hour workday, nor did the ALJ reason that Dr. Robinson's opinion was inconsistent with Dr. Mwantuali's opinion. (T. 16.) Therefore, the ALJ did not rely on Dr. Mwantuali's silence as substantial evidence in lessening the weight he afforded to Dr. Robinsons' opinion.

Further, the ALJ did not rely on Dr. Mwantuali's silent opinion as substantial evidence that Plaintiff could perform the sitting requirements of sedentary work.

Regarding Dr. Rehmatullah's opinion, the ALJ specifically afforded his March 2, 2011 opinion, that Plaintiff was unable to work, "very limited weight." (T. 16.) The ALJ reasoned that this opinion was inconsistent with treatment and examination records. (T. 16-17.) The ALJ further reasoned the opinion was rendered immediately prior to Plaintiff's surgery. (T. 17.) The ALJ did not afford a specific weight to the remainder of Dr. Rehmatullah's opinion; however, the ALJ clearly relied on his opinion in making his RFC determination. *Curtis v. Colvin*, No. 5:11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed"). On numerous occasions Dr. Rehamtullah determined, based on his examination and a review of Dr. Robinson's notations, that Plaintiff was capable of working her desk job and performing ADLs. (T. 372, 373, 376, 378, 381, 384.)

Substantial evidence supported the ALJ's determination that Plaintiff could sit up to six hours in an eight hour day as required by sedentary work. 20 C.F.R. § 404.1567(a). Specifically, the ALJ's determination was supported by the medical opinions of Plaintiff's treating provider, Dr. Rehmatullah. As discussed herein, Dr. Rehmatullah opined on numerous occasions that Plaintiff could perform her desk job. Although Plaintiff was working only twenty hours a week, the record indicated that this limitation was due to the nature of her work, not due to her impairments. (T. 31.) The ALJ also relied on the physical examination findings of Dr. Robinson which indicated

Plaintiff had tenderness in her lumbar spine and reduced range of motion, but failed to indicate Plaintiff had any limitations in her ability to sit. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983) (An ALJ "is entitled to rely not only on what the record says, but also on what the record does not say.") The ALJ also relied on the non-examining State agency medical consultant who opined on October 28, 2011, that based on a review of the medical evidence, Plaintiff could sit for a total of six hours in an eight hour workday. (T. 325.)

Therefore, although Dr. Robinson opined Plaintiff could only sit up to two hours in an eight hour work day, the ALJ properly afforded his opinion "limited weight" and further, substantial evidence supported the ALJ's determination that Plaintiff could sit up to six hours in an eight hour work day.

Plaintiff also argues the ALJ erred in his mental RFC determination. (Dkt. No. 11 at 11-13 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ erred in his evaluation of the opinion of consultative examiner, Jeanne Shapiro, Ph.D. (*Id.*)

Dr. Shapiro examined Plaintiff on September 22, 2011. (T. 315-318.) Dr. Shapiro observed that Plaintiff's appearance was normal, her speech was normal, her though process was normal, her mood was depressed and her affect was constricted. (T. 317.) She noted Plaintiff's attention and concentration was intact, her recent and remote memory skills were intact, and her intellectual functioning was estimated to be in the low average range. (*Id.*) In a medical source statement, Dr. Shapiro opined that Plaintiff "may have difficulty adequately understanding and following some instructions and directions as well as completing some tasks due to memory and concentration deficits." (T. 318.) Dr. Shapiro also opined that Plaintiff "may have difficulty interacting

appropriately with others due to social withdrawal" and further Plaintiff's lack of motivation and lethargy may make attending or maintaining a work schedule difficult. (*Id.*)  Dr. Shapiro opined Plaintiff did not appropriately manage stress.  (*Id.*)

The ALJ afforded Dr. Shapiro's medical source statement "limited weight."  (T. 18.)  The ALJ disagreed with Dr. Shapiro's opinion that Plaintiff's memory and concentration may cause her difficulty, because Dr. Shapiro's examination found Plaintiff's memory and concentration to be intact.  (*Id.*)  The ALJ noted that Plaintiff's memory and concentration were also found to be intact during an evaluation by Psychological Healthcare.  (*Id.*)

Plaintiff argues the ALJ erred in his mental RFC determination because he determined at step three of the sequential process that Plaintiff had "moderate" limitations with regarding to concentration, persistence or pace.  (Dkt. No. 11 at 11 [Pl.'s Mem. of Law].)  However, it is well established that a step three determination is not the same as an RFC assessment, but instead is used to rate the severity of mental impairment.  SSR 96-8p, 1996 WL 374182 (July 2, 1996); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Skiba v. Covlin*, No. 3:13-CV-1361, 2015 WL 1780633, at *6 (N.D.N.Y. April 20, 2015); *Huestis v. Comm'r of Soc. Sec.*, No. 2:13-CV-201, 2014 WL 4209927, at *2 (D. Vt. Aug. 25, 2014).

Further, a moderate limitation in this area would not necessarily preclude the ability to perform the basic mental demands of unskilled work. *See  Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).  Therefore, the ALJ's mental RFC determination was not in error where the RFC determination did not perfectly mirror his step three determination.  In addition, failure to explicitly incorporate a limitation in concentration,

persistence and pace may be harmless error if the medical evidence demonstrates the plaintiff can engage in simple, routine tasks or unskilled work or the hypothetical posed to the VE implicitly accounted for the plaintiff's limitations in concentration, persistence, and pace. *Huestis v. Comm'r of Soc. Sec.,* No. 2:13-CV-201, 2014 WL 4209927, at *5 (D. Vt. Aug. 25, 2014) (citing *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014). Here, the ALJ determined Plaintiff could perform simple, routine tasks and the other basic mental demands of unskilled work. (T. 13.)[2]  For the reasons outlined herein, the ALJ's mental RFC determination was supported by substantial evidence; therefore, any error the ALJ may have committed in failing to explicitly incorporate Plaintiff's "moderate" limitations in social functioning was harmless.

Next, Plaintiff argues the ALJ erred in crediting some aspects of Dr. Shapiro's opinion and ignoring other aspects. (Dkt. No. 11 at 12-13 [Pl.'s Mem. of Law].)  First, the ALJ afforded the entirety of Dr. Shapiro's opinion "limited weight." (T. 18.)  Second, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the

---

[2]        Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.")

ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Third, the ALJ did not ignore portions of Dr. Shapiro's opinion. Plaintiff argues the ALJ ignored Dr. Shapiro's opinion regarding Plaintiff's lack of motivation and lethargy. (Dkt. No. 11 at 13 [Pl.'s Mem. of Law].) However, the ALJ specifically stated in his decision that Dr. Shapiro "further found that attending work or maintaining a schedule may be difficulty due to lack of motivation and lethargy and she does not appropriately manage stress." (T. 18.) Therefore, the ALJ did not ignore portions of Dr. Shapiro's opinion as Plaintiff alleges.

Plaintiff argues the ALJ again substituted his own lay opinion for that in the medical record because he failed to afford any psychological opinion great weight and the ALJ improperly relied on Plaintiff's GAF score. (Dkt. No. 11 at 12 [Pl.'s Mem. of Law].)[3] Contrary to Plaintiff's argument, the ALJ did afford the psychological non-examining State agency examiner "great weight." (T. 18.) The examiner reviewed Dr. Shapiro's notations and concluded Plaintiff retained the ability to perform unskilled work. (T. 346.) Further, the ALJ did not err in mentioning Plaintiff's GAF score as one factor his overall evaluation of the medical opinion evidence in the record. (T. 17.) The ALJ properly noted that a GAF score of 60 was inconsistent with the conclusion that Plaintiff had serious limitations in maintaining attention, working without distraction, and adhering to standards of neatness and cleanliness. (*Id.*) In addition, as stated by Defendant, any erroneous reliance on a GAF score here would be harmless as

---

[3]  "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.' *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed.2000)).

substantial evidence supported the ALJ's RFC assessment.  (Dkt. No. 15 at 13 [Def.'s Mem. of Law].)

Therefore, for the reasons stated herein and further outlined in Defendant's brief, the ALJ did not err in his assessment of the medical evidence in the record regarding Plaintiff's mental limitations.  Further, the ALJ's mental RFC was supported by the opinion of the non-examining State agency examiner and the objective observations of Dr. Shapiro.

## B.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 (July 2, 1996). First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a); SSR 96–7p, at *3.  Second, if the

medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible "to the extent they [were] inconsistent with the above [RFC]." (T. 15.)

Plaintiff argues the ALJ committed legal error in concluding that Plaintiff's credibility was inconsistent with his RFC determination. (Dkt. No. 11 at 14 [Pl.'s Mem. of Law].) To be sure, although a "[plaintiff's] credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue*, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue*, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)

("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that he improperly arrived at his RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). Therefore, the ALJ did improperly conclude Plaintiff's statements were not credible in that they were inconsistent with the RFC determination; however, use of this erroneous boilerplate language was harmless.

Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of a plaintiff's credibility "explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Further, it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1982). Although the ALJ improperly concluded Plaintiff's statements were not credible because they were inconsistent with his RFC determination, the ALJ did provide a credibility analysis which allowed this Court to determine the legitimate reasons for the ALJ's disbelief.

The ALJ discussed the appropriate factors in evaluating Plaintiff's credibility. The ALJ discussed Plaintiff's activities of daily living (T. 14-15), the location duration, frequency and intensity of symptoms (T. 15), factors that aggravated symptoms (T.15), and other factors, such as Plaintiff leaving work due to the death of her employer (T.

14).  20 C.F.R. § 404.1529(c)(3)(i)-(vii).  A reading of the ALJ's decision indicated that he conducted a thorough analysis and "employed the proper legal standards in assessing the credibility of [P]laintiff's statement."  *McGill v. Colvin*, No. 5:14-CV-0601, 2014 WL 2779232, at *12 (N.D.N.Y. June 19, 2014).  Therefore, any error in his boilerplate credibility conclusion was harmless error because a reading of the decision clearly indicated that the ALJ's credibility analysis and determination adhered to the factors outlined in the Regulations.

### C.   The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).  Here, the ALJ relied on the testimony of a VE in making his step five determination.  (T. 19-20.)

Plaintiff argues the ALJ erred in his reliance on VE testimony because the ALJ presented a hypothetical RFC to the VE that was not supported by substantial evidence. (Dkt. No. 11 at 15 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on

that assessment.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      May 19, 2016

William B. Mitchell Carter
U.S. Magistrate Judge